PEOPLE v LUCAS

Docket No. 116305. Submitted December 4, 1990, at Lansing. Decided
April 16, 1991, at 9:20 A.M. Leave to appeal sought.

James R. Lucas was convicted of possession with intent to deliver
more than 225 grams but less than 650 grams of cocaine
following a jury trial in the Oakland Circuit Court, Steven N.
Andrews, J., and of being a fourth-offense habitual offender.
The cocaine was discovered in the defendant's apartment pur-
suant to a search warrant obtained on the basis of information
acquired during a monitored telephone conversation with a
police informant. The defendant appealed, challenging the
validity of the warrant because of the lack of probable cause
and the absence in the supporting affidavit of evidence estab-
lishing the credibility and reliability of the informant, the
failure to give certain jury instructions, and the failure to
quash a prior conviction supporting the habitual offender con-
viction.

The Court of Appeals *held:*

The warrant to search the defendant's apartment was valid.
The monitoring by the police of the informant's conversation
with the defendant on an extension telephone with the infor-
mant's consent was proper. The affidavit used to secure the
warrant provided an adequate basis upon which the magistrate
could determine that the information supplied by the unnamed
informant was credible.

1. Police monitoring of a telephone conversation from an
extension telephone with the consent of one of the parties to
the conversation does not constitute a constitutionally imper-
missible invasion of the right to privacy, because there is no

REFERENCES

Am Jur 2d, Searches and Seizures §§ 64, 65, 68, 69; Telecommunica-
tions §§ 213.5, 215-217.

Easedropping on extension telephone as invasion of privacy. 49
ALR4th 430

Permissible warrantless surveillance, under state communications
interception statute, by state or local law enforcement officer or
one acting in concert with officer. 27 ALR4th 449.

Propriety of considering hearsay or other incompetent evidence in
establishing probable cause for issuance of search warrant. 10
ALR3d 359.

justifiable or reasonable expectation that one's conversation with another may not be monitored with the other person's permission.

2. The facts and circumstances surrounding an uncompleted drug transaction provided an adequate basis upon which the magistrate could find probable cause to believe that cocaine would be found in the defendant's apartment.

3. The supporting affidavit provided an adequate basis from which the magistrate could conclude that the unnamed informant spoke with personal knowledge and that either the informant was credible or the information was reliable.

4. The record supports the trial court's conclusion that the police did not intend to mislead the magistrate by failing to provide information secured when a police officer answered the defendant's mobile telephone. Neither did the trial court abuse its discretion in limiting the scope of cross-examination at the suppression hearing relative to that telephone conversation or in refusing to order production of the informant at that hearing.

5. The defendant failed to show any prejudice arising out of the failure of the police to provide at the time the search was conducted the statutorily required tabulation of items seized.

6. There was probable cause both for the stopping of the defendant's vehicle in the parking lot and for the search of the vehicle.

7. The officer's answering of the defendant's mobile phone did not constitute a violation of either state or federal eavesdropping laws. The testimony of the police officer concerning the nature of his conversations with the unknown callers was properly admitted into evidence as admissions against penal interest and was more probative than prejudicial.

8. While the admission into evidence of the small quantity of cocaine discovered in the defendant's vehicle was error, it was harmless error.

9. The trial court did not abuse its discretion in holding that an adequate foundation had been laid for the testimony concerning the chemical analysis of the cocaine.

10. While the trial court should have instructed the jury regarding the included offense of possession of less than fifty grams of cocaine, that error was harmless in view of the jury's refusal to convict of the included offense of possession of 225 grams but less than 650 grams. The record does not factually support the defendant's assertion that he should have been charged with unlawful use.

11. Because the defendant did not claim either that he was

denied counsel or that he was not informed of his rights at one of the prior guilty plea proceedings upon which the habitual offender charge was based, the mere fact that the stenographic notes of that proceeding were indecipherable is not sufficient to carry the defendant's burden of showing that the prior proceeding was constitutionally invalid.

Affirmed.

1. SEARCHES AND SEIZURES — TELEPHONE COMMUNICATIONS.

The police may monitor a telephone conversation between two individuals without first obtaining a search warrant where the monitoring is done by means of an extension telephone and with the knowledge and permission of one of the parties to the conversation (Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — AFFIDAVITS.

A magistrate may make a finding of probable cause to issue a search warrant on the basis of information in a supporting affidavit supplied by an unnamed person where there are affirmative allegations from which the magistrate can conclude that the unnamed person spoke with personal knowledge of the information and that either the unnamed person is credible or the information is reliable (MCL 780.653; MSA 28.1259[3]).

3. TELECOMMUNICATIONS — EAVESDROPPING.

Answering the telephone of another and conversing with the party on the line does not constitute eavesdropping within the meaning of the Michigan eavesdropping statute; eavesdropping contemplates a third party listening to the conversation of others rather than the listener being involved in the conversation (MCL 750.539a[2]; MSA 28.807[1][2]).

4. TELECOMMUNICATIONS — EAVESDROPPING.

The answering of a telephone of an accused by a police officer who is lawfully in the place where the telephone is located and the conversing with the person who made the call is not violative of the federal eavesdropping statute, the answering of the telephone being under color of law and the officer being a party to the conversation (18 USC 2511, 18 USC 2515).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Sarah E. Hunter,* Assistant Prosecuting Attorney, for the people.

*Daniel J. Blank,* for the defendant.

Before: Hood, P.J., and Weaver and Marilyn Kelly, JJ.

Per Curiam. Following a jury trial, defendant was convicted of possession with intent to deliver more than 225 grams, but less than 650 grams, of cocaine.[1] He was then found guilty in a bench trial of being an habitual offender, fourth offense.[2] Defendant's sentence of ten to thirty years' imprisonment for the underlying crime was vacated and enhanced under the habitual offender conviction to seventeen to forty years' imprisonment. Defendant appeals as of right, raising a plethora of issues, none of which requires reversal.[3]

Defendant was arrested in a restaurant parking lot after a police informant, who had known defendant for fifteen years, arranged to have defendant deliver a large quantity of cocaine at the restaurant. The informant had told the police that defendant was able to deliver the quantity which had been discussed. The informant telephoned defendant to arrange the deal. During their conversation, a sheriff's deputy listened in on an extension phone with the informant's consent, but without defendant's knowledge. After the call established that the delivery would occur at the restaurant the next day, the police began a surveillance of defendant's apartment.

The next morning, the police observed a man matching defendant's description leave the apartment and drive in the direction of the restaurant. The surveillance team followed the vehicle to the parking lot designated for the illegal transaction.

---

[1] MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii).

[2] MCL 769.12; MSA 28.1084.

[3] We have rearranged and consolidated defendant's eleven issues on appeal.

The police stopped the vehicle upon the belief that it would contain the cocaine contemplated in the deal which had been arranged during the informant's call. When the officers surrounded the vehicle and approached defendant, he stated that he did not have "anything" with him. Following his arrest, the police searched his vehicle and discovered a small quantity of cocaine in an empty cigarette package above the driver's visor and a bag with cocaine residue in the trunk. They did not discover the large quantity of cocaine contemplated in the deal between defendant and the informant.

While defendant was being arrested and his car searched, a mobile phone within the vehicle rang repeatedly. Several of the calls were answered by Commander Melvin Turner, who was in charge of the police unit. The vast majority of the calls were related to the sale or acquisition of cocaine.

Having failed to uncover the large quantity of cocaine which they expected to find in the vehicle, the police secured a search warrant for defendant's apartment. Among the items discovered and seized at the apartment were approximately 450 grams of cocaine, $2,500 in cash, and a variety of drug paraphernalia.

I

On appeal defendant raises a host of issues addressing various aspects of the supporting affidavit and warrant obtained for the search of his apartment, which led to the discovery of the large quantity of cocaine that was the subject of the charges against him and the basis for his conviction.

A

Defendant first argues that the police were re-

quired to secure a search warrant before they listened in on an extension phone to the conversation between the informant and himself. During this call, the arrangements for the delivery of a large quantity of cocaine were made. The informant had consented to the police listening on the extension, but defendant had no knowledge that a third party was on the line. Defendant claims that his rights under the Michigan Constitution were violated when the police "electronically monitored" this conversation. He contends that the prohibition against monitoring of conversations without a warrant announced in *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975),[4] was extended by this Court in *People v Calabro,* 166 Mich App 389; 419 NW2d 791 (1988), to situations where a police officer listens in on an extension to a phone conversation with the consent of only one of the parties. Because the officer in this case did not have a warrant to listen in on the conversation, defendant contends that all information obtained as a result of that unlawful conduct must be deleted from the search warrant affidavit as the "fruits of the poisonous tree." Defendant asserts that when that information is deleted, the affidavit fails to establish probable cause to support the issuance of the search warrant for his apartment. Absent a warrant, the search was invalid, and the items seized should have been suppressed.

The use of undercover police officers, informants, and electronic surveillance devices has often been a valuable investigative tool of law enforcement agencies. Because of the covert characteristics of such activities, the courts have frequently addressed whether a particular practice, designed to obtain incriminating evidence from a defendant's

---

[4] Cert den 423 US 878 (1975).

conversation, requires a search warrant under the Fourth Amendment.[5]

In *People v Beavers,* our Supreme Court determined that the search and seizure provision of the Michigan Constitution, Const 1963, art 1, § 11, required the police to obtain a search warrant prior to employing an informant to purchase narcotics from the defendant at his home while equipped with a hidden radio transmitter that

---

[5] See, e.g., *On Lee v United States,* 343 US 747; 72 S Ct 967; 96 L Ed 1270 (1952) (No search warrant was required where a drug enforcement agent equipped with a hidden microphone engaged the defendant in an incriminating conversation in the defendant's dry-cleaning store while simultaneously transmitting to other officers off the premises.); *Silverman v United States,* 365 US 505; 81 S Ct 679; 5 L Ed 2d 734 (1961) (The Fourth Amendment was violated by the unauthorized physical intrusion into the defendant's house by the use of a "spike mike"; a search warrant is required before physical intrusion into a constitutionally protected area.); *Lopez v United States,* 373 US 427; 83 S Ct 1381; 10 L Ed 2d 462 (1963) (No Fourth Amendment violation occurred in face-to-face and third-party monitoring where an IRS agent engaged the defendant in incriminating conversation at his restaurant while equipped with a transmitter and pocket wire recorder, because there was no physical invasion; the only purpose for recording the conversation was to obtain the most reliable evidence and to protect the agent's credibility.); *Lewis v United States,* 385 US 206; 87 S Ct 424; 17 L Ed 2d 312 (1966) (No Fourth Amendment violation occurred when a federal narcotics agent was invited into the defendant's home after falsely representing his identity and stating his willingness to purchase narcotics; the agent never took, heard, or saw anything not contemplated by the visits.); *Hoffa v United States,* 385 US 293; 87 S Ct 408; 17 L Ed 2d 374 (1966) (No Fourth Amendment violation occurred where a police informant repeated the defendant's incriminating statements made during conversations in or near his hotel room. No legitimately protected Fourth Amendment right was involved; the Fourth Amendment does not protect a wrongdoer's misplaced trust in a confidant.); *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967) (The defendant had a reasonable expectation of privacy, which the Fourth Amendment protects, in the public telephone booth he used. People, not areas, are protected from unreasonable searches and seizures by the Fourth Amendment; a warrant was required before the phone booth could be bugged.); *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971). (No Fourth Amendment violation occurred where the defendant had no justifiable or constitutionally protected expectation that the informant with whom he was conversing would not then or later reveal that conversation to the police; a defendant is not protected from misplaced confidence in an informant who simultaneously transmits a conversation to the police.).

relayed their conversation to the officers. The Court acknowledged the widespread concern over the advent of increasingly sophisticated electronic surveillance equipment and the importance of reconciling the competing interests of law enforcement and the protection of privacy rights. However, the Court limited its analysis to the constitutional validity of electronic surveillance conducted without a warrant by police with the assistance of a "bugged" informant. 393 Mich 563. The Court noted that this same issue was addressed by the United States Supreme Court in *United States v White,* 401 US 745; 91 S Ct 1122; 29 L Ed 2d 453 (1971).

In *White,* a plurality of the Court determined that the defendant's Fourth Amendment rights under the federal constitution were not violated by such conduct. Justice White reasoned that if the conduct and revelations of an agent or informant operating without electronic surveillance equipment do not violate a defendant's constitutionally justifiable expectations of privacy, then neither does a recording of the same conversation made from transmissions received from the agent or informant to whom the defendant is speaking and whose trustworthiness the defendant necessarily risks.[6]

Our Supreme Court, however, rejected Justice White's rationale and declined to rule that a defendant's misplaced confidence in a disguised police informant who instantaneously transmits the parties' conversation to the police deprives the conversation of its private character. *Beavers, supra,* p 564. Instead, the Court was persuaded by and adopted the rationale in Justice Harlan's dissent in *White* that there is a significant differ-

6 401 US 751-754.

ence between assuming the risk that communications directed at one party might subsequently be repeated and the simultaneous monitoring of the communication by the uninvited ear through the use of sophisticated electronic surveillance devices by one of the participants. The *Beavers* Court determined that this type of electronic surveillance is subject to the protection of the Michigan Constitution against unreasonable searches and seizures. 393 Mich 565-566.

The *Beavers* search warrant requirement has been extended by this Court to situations where a participant records a telephone conversation.[7] The surreptitious recording of the phone call is considered as serious an invasion of privacy as that which occurs when a participant simultaneously transmits a conversation to a third party.[8] In *People v Calabro,* a panel of this Court extended the *Beavers* search warrant requirement, without analysis, to situations where the police listen in on an extension phone to a telephone conversation between a consenting party and an unknowing defendant.[9] Noting the factual similarity in the police conduct, defendant argues that *Beavers* and

[7] See *People v Artuso,* 100 Mich App 396; 298 NW2d 746 (1980); *People v Taylor,* 93 Mich App 292; 287 NW2d 210 (1979); *People v Perry,* 91 Mich App 79; 282 NW2d 14 (1979); *People v Hall,* 88 Mich App 324; 276 NW2d 897 (1979).

[8] Cf. *People v Dubose,* 91 Mich App 633; 283 NW2d 644 (1977).

[9] The Court's entire analysis of this issue was as follows:

In *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), cert den 423 US 878 (1975), the Supreme Court held that the Michigan Constitution requires the police to obtain a search warrant prior to monitoring a conversation, even where one party to the conversation has consented to the monitoring. Therefore, on the facts presented, despite Cynthia Calabro's consent to the police officer's listening on the phone extension, because no search warrant was previously obtained the officer's testimony concerning the conversation was improperly admitted. [166 Mich App 392.]

*Calabro* require the deletion from the search warrant affidavit of the information overheard on the informant's extension phone by the officer. For the reasons expressed below, we do not agree with *Calabro* and conclude that the *Beavers* search warrant requirement does not apply to this type of police conduct.

Defendant's reliance on *Beavers* is misplaced. The *Beavers* Court specifically distinguished "participant monitoring" from third-party eavesdropping.

> Where the phrase "participant monitoring" appears, we specifically refer to the use of an electronic device *by a participant* of a conversation which transmits the exchange to a third party. We do not address those situations which include a participant himself *recording* the conversation or the use of an electronic device by a *third party only* to eavesdrop upon a conversation between two parties, one of whom is cooperating with the authorities. [393 Mich 562-563, n 2. Emphasis in original.]

This case, unlike *Beavers,* involved the use of an extension phone by a third party only to listen in on, and not record, the conversation between the consenting informant and defendant. Although the distinction may be considered a fine one, we do not believe that *Beavers'* ratio decidendi is applicable to this type of police conduct.

*Beavers* rested on the conclusion that the Michigan Constitution affords its citizens greater protection from searches and seizures than that afforded under the Fourth Amendment of the United States Constitution. 393 Mich 567-568. By reaching this conclusion, our Supreme Court was no longer bound by the plurality opinion in *United States v White* and was free to adopt the dissenting analy-

sis of Justice Harlan. In particular, the Court agreed with Justice Harlan's opinion that one's expectation of privacy should not be subjected to the possibility that communications directed at one party are simultaneously being intercepted by a third party through the use of surveillance devices. 393 Mich 564-565. However, we do not believe that Justice Harlan's "logic" or the Court's rationale in *Beavers* is applicable to this type of police conduct. A reading of *Beavers* clearly reveals its overriding concern regarding the unrestricted use of highly sophisticated electronic surveillance devices. An extension phone simply does not fall within the class of equipment which concerned our Supreme Court in *Beavers* or the United States Supreme Court in *White* or the cases cited therein.

While a participant may control the extent of a conversation, this ability is necessarily affected by the mode of communication. Any person using a telephone to facilitate communication takes the risk that an uninvited listener may overhear the conversation on an extension phone. The interception °of wire communications is now governed largely by state and federal statutes.[10] However, in *Rathbun v United States,* 355 US 107; 78 S Ct 161; 2 L Ed 2d 134 (1957), the United States Supreme Court held that § 605 of the Federal Communication Act, 47 USC 605, had not been violated when the police listened on an extension phone with the consent of the complainant to a telephone call made by the defendant, but without his consent. 355 US 136. The Court reasoned that a call to a particular number could cause more than one phone to ring. Thus, each party to the conversation takes the risk that the other may have an

---

[10] See, e.g., 47 USC 605, 18 USC 2510 *et seq.*; and MCL 750.539a *et seq.*; MSA 28.807(1) *et seq.*

extension phone and may permit a third party to overhear the conversation. The Court determined that in this situation there has been no violation of any privacy rights and no "interception" within the meaning of § 605. The Court found no differences, for purposes of the statute, between the subscriber holding out the handset or letting another listen in on an extension. Since the communication was not privileged, one party could not force the other to secrecy merely by using a telephone. *Id.*

We recognize that *Rathbun* did not address the Fourth Amendment aspects of this type of investigative activity. Nevertheless, several cases have concluded that when the police listen in on an extension phone, the Fourth Amendment privacy rights of the unknowing party have not been violated.[11] These cases, and others, have found that the nonconsenting party did not have a reasonable expectation of privacy from a third party listening in on a regularly used extension phone.[12]

Unlike the situation in *Beavers,* there has been no "interception" of the communication by the police officer who listened in on the extension phone, and no "transmission" to a third party by the use of an electronic surveillance device. Since the method of gathering information did not involve the highly intrusive or sophisticated electronic devices which concerned the *Beavers* Court,

---

[11] See, e.g., *United States v Miller,* 720 F2d 227 (CA 1, 1983), cert den 464 US 1073 (1984); *United States v Hickman,* 426 F2d 515 (CA 7, 1970), cert den 402 US 966 (1971) (by implication); *United States v Jones,* 140 US App DC 70; 433 F2d 1176 (1970), cert den 402 US 950 (1971); *United States v Kaufer,* 406 F2d 550 (CA 2, 1969), aff'd 394 US 458 (1969); *Rogers v United States,* 369 F2d 944 (CA 10, 1966), cert den 388 US 922 (1967); *Coates v United States,* 307 F Supp 677 (ED Mo, 1970); *State v McDermott,* 167 NJ Super 271; 400 A2d 830 (1979) (by implication); *State v Jennen,* 58 Wash 2d 171; 361 P2d 739 (1961).

[12] See also *Holmes v Burr,* 486 F2d 55 (CA 9, 1973), cert den 414 US 1116 (1973); *Davis v United States,* 413 F2d 1226 (CA 5, 1969).

we conclude that there is no intrusion into the nonconsenting party's privacy when an officer listens on an extension phone. The nonconsenting party has no reasonable expectation of privacy from third-party monitoring by means of a regularly used extension phone, particularly where, as here, the consenting party was the initiator of the call.[13]

We do not limit our decision to situations where the consenting party initiated the call. If the action of initiating the call would be sufficient to create a justifiable expectation of privacy from third-party monitoring by means of an extension phone, a large "loophole" would be created for suspicious parties. We merely hold that a person does not have a reasonable expectation of privacy that a telephone call to which he is a party is not being overheard on an extension phone.

Because defendant had no justifiable or reasonable expectation that the telephone call that he received would not be monitored on the informant's extension phone, we hold that the police did not violate defendant's constitutional rights under the Michigan Constitution. No search warrant was required in this situation. To the extent that *Calabro, supra,* reached the contrary result, we reject that opinion as being wrongly decided without analysis. Consequently, the information overheard by the police officer when the informant called defendant to arrange the drug transaction was properly included in the search warrant affidavit.[14]

---

[13] See *Holmes, supra.* Cf. *People v Tebo,* 37 Mich App 141; 194 NW2d 517 (1971). (A person does not lose all protection merely because an extension line exists. Thus, use of a phone with an extension is not necessarily a "consent" to an interception for purposes of Title III of the Omnibus Crime Bill of 1968, 18 USC 2510-2520.)

[14] We note that in *Beaver* and *Calabro* the information deemed

**B**

Defendant's second argument is that the search warrant affidavit failed to establish probable cause to believe that controlled substances were located within his residence. Defendant contends that there was an insufficient nexus between his actions and the police officers' belief that there were controlled substances at his apartment. According to defendant, the only link to his apartment was that he was seen traveling from his parking lot to that of the restaurant where he was arrested with a small amount of cocaine in his car. We disagree with defendant's assessment of the facts supporting probable cause.

Probable cause sufficient to support the issuance of a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched. *People v White,* 167 Mich App 461, 463; 423 NW2d 225 (1988). We recognize that there exists a split of authority in this Court with respect to the applicable standard of review for the issuance of a search warrant.[15] However, our review of the record leads us to conclude that the magistrate did not abuse his discretion in issuing the search warrant, because a substantial basis

tainted was used at trial to support a finding of guilt. Unlike those cases, the information overheard on the extension phone in this case was merely used to support a finding of probable cause for the search warrant. Neither the informant nor the officer testified at trial concerning the incriminating statements made by defendant during that conversation.

[15] See *People v Kort,* 162 Mich App 680, 690; 413 NW2d 83 (1988) (a magistrate's determination of probable cause should be affirmed if there is a substantial basis to conclude that the evidence sought is probably present), and *People v Goins,* 164 Mich App 559, 560; 417 NW2d 499 (1987) (a magistrate's determination of probable cause should not be disturbed absent an abuse of discretion).

existed for the determination that probable cause existed.

The affidavit stated that a reliable informant had informed the affiant, a sheriff's deputy, that defendant could deliver large quantities of cocaine. At the very least, defendant's willingness to deliver such quantities was verified when the affiant overheard the conversation during which the transaction was arranged. Through surveillance, defendant was observed leaving his apartment and driving to the prearranged location on the date the transaction was to occur. When defendant was stopped, he informed the approaching officers that he did not have "anything" with him. However, the search of his vehicle uncovered a small quantity of cocaine above the driver's visor and cocaine residue in a bag in the trunk. In addition, several people called defendant's mobile phone requesting to purchase various amounts of cocaine or offering to sell drugs to defendant.

On the basis of the facts and circumstances surrounding the uncompleted drug transaction, we conclude that a sufficient basis was presented for the magistrate to find that probable cause existed to believe that the cocaine would be at defendant's apartment, inasmuch as it was not present in the vehicle.

C

Defendant's next challenge to the search warrant affidavit concerns the failure to comply with the requirements of both *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984), and MCL 780.653; MSA 28.1259(3) for establishing the unnamed informant's credibility and reliability. Defendant contends that the affidavit contained only uninformative and conclusory statements about informant

credibility, and contained no information regarding past instances where the informant supplied reliable information.

Initially, we note that the 1988 amendment of MCL 780.653; MSA 28.1259(3) modified the affidavit requirements announced in *Sherbine.* The statute now provides:

> The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
>
> \* \* \*
>
> (b) If the person is unnamed, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information *and either* that the *unnamed person* is credible *or* that the *information* is reliable. (Emphasis added.)

In this case, the information supplied by the informant was that defendant was a dealer who could supply large quantities of cocaine. The informant described defendant in detail, including his appearance, his address, and the type of car he drove. The informant personally arranged for defendant to sell a large quantity of cocaine the next day at the restaurant parking lot. Defendant's apparent willingness to participate in this transaction was verified by the affiant, who had listened to the conversation between the informant and defendant during which the details of the transaction were finalized. From their investigation and surveillance of defendant, the police were able to verify the information supplied by the informant.

Accordingly, we reject defendant's claim that the affidavit contained only uninformative and

conclusory statements regarding credibility or reliability. Taken out of context, the statement that the informant's "reliability and credibility has [sic] been verified through independant [sic] investigation of the affiant and other officers acting in conjunction with the affiant" appears to be conclusory. However, the statement was followed by the requisite affirmative allegations from which the magistrate could conclude that the informant spoke with personal knowledge and either that the informant himself was credible or that the information was reliable. We conclude, therefore, that the affidavit was not insufficient on this ground.

D

Prior to trial, defendant moved to suppress the evidence seized from his apartment, claiming that there had been a material omission in the search warrant affidavit. He argued that had the police included in the affidavit the information regarding one of the calls on his mobile phone in which the caller "T" wanted to deliver two kilograms of cocaine, the existence of probable cause to issue the . search warrant would have been negated. According to defendant, the two "kilos" sought to be delivered were the same two kilos intended for the transaction arranged with the informant. Therefore, defendant reasoned that once the police knew of this two-kilo delivery, they no longer had probable cause to believe that the cocaine contemplated in the arranged deal would be present in his apartment.

An evidentiary hearing on this issue was conducted by the trial court. Both the affiant and Commander Turner, who answered the mobile phone, testified about the numerous calls coming in on defendant's car phone. The information gath-

ered from these calls was given to the affiant. The police denied intentionally withholding information in the affidavit, and explained that they wanted to secure a search warrant before anyone could get to defendant's apartment and remove any contraband. Because they were under time constraints, the officers could not include information on each and every call that came in on the mobile phone.

At the conclusion of the hearing, the trial court found that the omission from the affidavit of the call from "T" regarding the delivery of cocaine was not deliberate, reckless, or material. The court determined that the police did not intend to mislead or deceive the magistrate, and that defendant failed to prove his claim by a preponderance of the evidence.[16]

A trial court's decision on a suppression motion will not be disturbed unless it was clearly erroneous. A decision is clearly erroneous when the appellate court is left with a firm and definite conviction that a mistake has been made. *People v Good,* 186 Mich App 180, 185; 463 NW2d 213 (1990); MCR 2.613(C). Deference is to be given to the trial court's resolution of factual issues, especially where such resolution involves the credibility of the witnesses who appear before it. *People v Crowell,* 186 Mich App 505, 507-508; 465 NW2d 10 (1990). We have reviewed the record developed at the suppression hearing and the trial court's findings in light of the testimony. Given that the resolution of the issues before the court involved the credibility of the officers testifying, we are not convinced that a mistake has been made. Accordingly, we conclude that the trial court's decision to

---

[16] See *Franks v Delaware,* 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978); *People v Turner,* 155 Mich App 222; 399 NW2d 477 (1986).

deny suppression on this ground was not clearly erroneous.

Defendant also claims that the trial court abused its discretion in limiting the scope of his cross-examination of the affiant during the suppression hearing. Although he was denied the opportunity to make an offer of proof, the record clearly indicates that defendant wanted to probe into other alleged misrepresentations in the affidavit to support his theory that the police deliberately misled the magistrate. In denying defendant's desired cross-examination, the trial court ruled that defendant had failed to make the preliminary showing required for an evidentiary hearing[17] on any issues other than the phone calls from "T" regarding two kilos of cocaine. The trial court also precluded defendant from questioning the affiant about the allegation in the affidavit that the informant was credible and reliable because the questioning was irrelevant to the purpose of the hearing.

A trial court is given wide discretion in determining the scope of cross-examination. The exercise of that discretion is not subject to review unless a clear abuse is shown. MRE 611; *People v Mixon,* 170 Mich App 508, 514-515; 429 NW2d 197 (1988), modified on other grounds 433 Mich 852 (1989). Having reviewed the record, we conclude that the trial court properly exercised its discretion to restrict cross-examination to matters relevant to the limited purpose of the hearing.

E

We also reject defendant's claim that the trial

---

[17] See *Franks, supra,* 438 US 155-156 (a defendant must first make a substantial preliminary showing that the false statement in the affidavit was knowingly and intentionally made, or was made with reckless disregard for the truth).

court erred when it refused to order the prosecution to produce the informant for an evidentiary hearing. Defendant admitted that he knew the identity of the informer, but was having difficulty serving a subpoena. In such a situation, the trial court's refusal to order production of a known informant is not clearly erroneous, particularly where the defendant does not base his request on a res gestae issue. See *People v Acosta,* 153 Mich App 504, 508-510; 396 NW2d 463 (1986).

F

Without explaining how he was prejudiced, defendant claims that suppression of the evidence seized from his apartment is required because the police failed to strictly comply with MCL 780.655; MSA 28.1259(5). This statute requires the police to make a complete tabulation of all items seized pursuant to the execution of a search warrant. The officer is required to give copies of the warrant and the tabulation "forthwith" to the person from whose premises the items were taken, or to leave the copies at the premises. There is no dispute that the police failed to leave the required documents; however, defendant was provided with the documents the following day at his arraignment. We hold that this "hypertechnical" violation of the statute does not require suppression of the evidence seized, particularly where defendant cannot articulate any harm or prejudice that resulted. *People v Myers,* 163 Mich App 120, 122-123; 413 NW2d 749 (1987). See also *People v Tennon,* 70 Mich App 447; 245 NW2d 756 (1976).

II

Defendant's next challenge focuses on the stop

and search of his vehicle at the restaurant parking lot. He argues that the initial stop was unlawful because the police did not have reasonable suspicion to believe that a crime was being committed. This argument is premised on his previous contention that the information gained by the police when an officer listened in on an extension phone to the informant's conversation with defendant was in violation of his Fourth Amendment rights and could not be used as a basis for forming reasonable suspicion. However, we have already rejected the underlying premise that a constitutional violation occurred. Accordingly, we reject defendant's claim that the stop of his vehicle was without reasonable suspicion. On the basis of the facts and circumstances known to the police at the time, we hold that the police clearly had reasonable suspicion to justify the stop of defendant's vehicle. *People v Estabrooks,* 175 Mich App 532, 535; 438 NW2d 327 (1989); *People v Spencer,* 154 Mich App 6, 10; 397 NW2d 525 (1986). See also *People v Cruz,* 161 Mich App 238; 409 NW2d 797 (1987).

In the alternative, defendant contends that the police did not have probable cause to search his vehicle, let alone the trunk of the car. We disagree. The search without a warrant of the passenger compartment of the vehicle was permissible as a search incident to defendant's lawful arrest which occurred when defendant was stopped. *New York v Belton,* 453 US 454, 458-460; 101 S Ct 2860; 69 L Ed 2d 268 (1981); *People v Sinistaj,* 184 Mich App 191, 199; 457 NW2d 36 (1990). Therefore, the small quantity of cocaine discovered above the driver's visor was seized pursuant to a lawful search.

Likewise, the search without a warrant of the

trunk of defendant's vehicle was permissible under
the automobile exception to the warrant require-
ment. Without reiterating the evidence, we con-
clude that the facts and circumstances of this case
support the conclusion that the police had proba-
ble cause to believe that contraband was some-
where within the vehicle. *United States v Ross,*
456 US 798, 825; 102 S Ct 2157; 72 L Ed 2d 572
(1982); *Sinistaj, supra,* pp 199-200. See also *People
v Harmelin,* 176 Mich App 524, 534; 440 NW2d 75
(1989); *Cruz, supra,* pp 241-242.

### III

During his arrest, defendant's mobile phone
rang repeatedly. Commander Turner answered
several of these calls, some of which were referred
to in the affidavit supporting the search warrant.
At trial, Turner testified about the contents of a
number of these calls. On appeal, defendant claims
that any information gained from the phone calls
should have been suppressed because Commander
Turner, in answering the mobile phone, violated
MCL 750.539a *et seq.*; MSA 28.807(1) *et seq.,* 18
USC 2510 *et seq.*; and Const 1963, art 1, § 11. We
disagree that suppression of the information
gained from calls was required.

Initially, we reject defendant's contention that
Commander Turner "eavesdropped"[18] when he an-
swered the ringing car phone, inasmuch as there
was no private discourse between the sender and

[18] MCL 750.539a(2); MSA 28.807(1)(2) provides:

"Eavesdrop" or "eavesdropping" means to overhear, record,
amplify or transmit any part of the private discourse of others
without the permission of all persons engaged in the discourse.

some other receiver.[19] Because we conclude that he was not an eavesdropper, we hold that Commander Turner did not violate MCL 750.539c; MSA 28.807(3).[20]

Likewise, we reject defendant's claim that suppression was required under 18 USC 2515,[21] which prohibits the use in any trial of communications intercepted in violation of any other provisions of the chapter. Although defendant has not specified which particular provision he feels was violated by Commander Turner, it appears that 18 USC 2511(1) could be applicable. This section provides that a person who intentionally intercepts any wire, oral, or electronic communication is subject to criminal or civil liability. However, we note that § 2511(2)(c) exempts the interception by a "person acting under color of law" where such person is a party to the communication. Commander Turner's presence in the vehicle was lawful following defendant's arrest, and, in answering the phone, he was clearly acting under color of law. Accordingly, we

---

[19] See, e.g., *Sullivan v Gray,* 117 Mich App 476, 481; 324 NW2d 580 (1983) (MCL 750.539c; MSA 28.807[3] contemplates that an eavesdropper must be a third party not otherwise involved in the conversation being eavesdropped on).

[20] MCL 750.539c; MSA 28.807(3) provides in part:

Any person . . . who wilfully uses any device to eavesdrop upon [a private] conversation without the consent of all parties thereto . . . is guilty of a felony . . . .

[21] 18 USC 2515 provides in part:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding . . . if the disclosure of that information would be in violation of this chapter.

This section's prohibition applies to evidence in both state and federal trials. *Lee v Florida,* 392 US 378; 88 S Ct 2096; 20 L Ed 2d 1166 (1968); *People v Warner,* 401 Mich 186, 201; 258 NW2d 385 (1977).

hold that the exception in § 2511(2)(c) applies in this case and that no violation of the statute occurred. Accord *United States v Passarella,* 788 F2d 377 (CA 6, 1986).

Furthermore, we hold that art 1, § 11 of the Michigan Constitution was not violated when Commander Turner answered defendant's car phone without a search warrant. Defendant has no reasonable expectation of privacy with regard to conversations in which he did not participate. *Passarella, supra,* p 379. See also *People v Smith,* 420 Mich 1, 26; 360 NW2d 841 (1984). Defendant's reliance on *Beavers, supra,* is likewise misplaced. As previously indicated, *Beavers* addressed "participant monitoring" and did not deal with the issue whether a search warrant is required in a situation where the defendant is not a party to the conversation.

IV

Defendant's next set of issues focuses on the admission of various evidence. We find no merit in any of these issues, but will briefly address each.

A

As indicated, Commander Turner was permitted to testify at trial about the contents of some of the calls he answered on defendant's mobile phone. While we agree with defendant that the trial court erred in ruling that the testimony was not hearsay, we will not reverse when the court reaches the correct result but for the wrong reason. *People v Beckley,* 161 Mich App 120, 131; 409 NW2d 759 (1987), aff'd 434 Mich 691; 456 NW2d 391 (1990). The statements made during the calls were assertions and were being used by the prosecutor to

prove the truth of the matters they asserted. Thus, the statements were hearsay under MRE 801. We conclude, however, that the statements made by the unknown callers were admissible under MRE 804(b)(3) as statements against the declarants' penal interests.[22]

We also reject defendant's claim that these statements should have been excluded under MRE 403 as being more prejudicial than probative. The contents of the mobile phone calls had great probative value in this case. The numerous requests for the purchasing and supplying of drugs were highly indicative of defendant's ability and intent to possess and distribute illegal substances. We find that no "unfair prejudice" was created by the introduction of this highly probative evidence, and thus the trial court did not abuse its discretion in permitting its introduction. *People v Oliphant,* 399 Mich 472, 490; 250 NW2d 443 (1976); *People v Harvey,* 167 Mich App 734, 745-746; 423 NW2d 335 (1988).

**B**

Defendant also argues that it was an abuse of discretion for the trial court to permit the introduction of the small amount of cocaine seized from his car. We agree with defendant that the court was incorrect to rely on *People v Delgado,* 404 Mich 76; 273 NW2d 395 (1978), as a basis for admission. In *Delgado,* a small amount of heroin was sold to an undercover agent as a "sample" of the larger quantity requested by the agent. This sale was clearly contemplated as a condition prece-

---

[22] The rationale behind this exception is that the information is reliable because the declarant would not make a statement against the declarant's own interest if it were not true. In this case, a person is unlikely to call someone to try to purchase illegal drugs over the phone unless the person really wants them.

dent to the subsequent purchase of the larger quantity of the drug. The Court determined that the two deliveries were "inextricably related" such that the jury was entitled to hear the whole story. *Id.,* pp 83-84. The Court reasoned that the small amount purchased was so blended or connected with the agreement to deliver the larger quantity that proof of the small purchase helped explain the circumstances of the subsequent sale. *Id.,* p 83. However, in this case there was no evidence which could support the necessary inference that the small amount of cocaine found in defendant's car was in any way a condition precedent to the larger anticipated transaction. See *People v Rosen,* 136 Mich App 745, 754-755; 358 NW2d 584 (1984). In fact, the police believed that defendant would arrive at the restaurant with the large quantity contemplated in the arrangement with the informant.

Likewise, we agree that admission of this evidence was improper under MRE 404(b)[23] and MCL 768.27; MSA 28.1050.[24] We recognize that defendant's intent was in issue. However, we fail to see

[23] MRE 404(b) states:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.

[24] Similarly, MCL 768.27; MSA 28.1050 provides:

In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the

how the small quantity of cocaine seized from defendant's car tended to prove that he possessed the intent to deliver between 225 grams and 650 grams of cocaine, especially since we have rejected the prosecutor's argument that the small quantity was just a "sample" of the larger quantity contemplated. We conclude, therefore, that the trial court abused its discretion in admitting this evidence.

Nevertheless, we find that reversal is not required because the error was harmless beyond a reasonable doubt. See *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972). There was overwhelming evidence that defendant possessed over 450 grams of cocaine with the intent to deliver.

C

Furthermore, we reject defendant's argument that the prosecutor failed to elicit a sufficient foundation from the chemical analysis expert regarding the reliability of the tests used to justify the admission of the cocaine into evidence. We recognize that the accuracy of the methods used is a requisite element of establishing a sufficient foundation. See, e.g., *People v Schwab,* 173 Mich App 101, 103; 433 NW2d 824 (1988); *People v Soltis,* 104 Mich App 53, 55; 304 NW2d 811 (1981); *People v Krulikowski,* 60 Mich App 28, 32-33; 230 NW2d 290 (1975). However, the trial court is afforded considerable discretion in deciding whether a proper foundation has been laid. *Id.,* p 33. We have reviewed the testimony of the laboratory expert and conclude that the trial court did not abuse its discretion. Although the witness did

act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.

not detail the various tests conducted, he did state that two crystal tests and two instrumental tests all generated consistent results that the substance was cocaine. Implicit in such testimony is the conclusion that these tests were reliable, having all reached consistent results. Accordingly, we find no abuse of discretion.

V

Defendant is correct that the evidence presented[25] justified his request for an instruction on possession of less than fifty grams of cocaine. *People v Beach,* 429 Mich 450, 465; 418 NW2d 861 (1988); *People v Kamin,* 405 Mich 482, 493; 275 NW2d 777 (1979). Possession of a controlled substance is a cognate lesser included offense of possession with intent to deliver involving a differently categorized statutory amount.[26] *People v Marji,* 180 Mich App 525, 531; 447 NW2d 835 (1989); *People v Leighty,* 161 Mich App 565, 578-579; 411 NW2d 778 (1987). Therefore, the trial court erred in refusing defendant's request. However, we find that this error was harmless and does not require reversal. The jury was instructed concerning the lesser included offense of possession of between 225 and 650 grams of cocaine, but

[25] Our review of the record for this issue included the evidence of the small quantity of cocaine retrieved from defendant's car, even though we previously determined that the introduction of that evidence was erroneous.

[26] There are two classes of lesser-included offenses: (1) necessarily included offenses, and (2) cognate included offenses. The former are those which must be committed in order to commit the greater offense, while the latter merely share several elements and are in the same class or category, but contain some elements not found in the greater offense. *People v Ora Jones,* 395 Mich 379, 387; 236 NW2d 461 (1975). The jury must be instructed on necessarily included offenses upon request; however instructions on cognate lesser included offenses are required only when requested and supported by the evidence. *People v Kamin,* 405 Mich 482, 493; 275 NW2d 777 (1979).

rejected this and convicted defendant of the greater offense. *Beach, supra,* p 491. Therefore, we find that this verdict necessarily indicated the jury's rejection of the lesser charge of possession of less than fifty grams of cocaine.

Defendant's request for an instruction on the misdemeanor charge of unlawful use of cocaine also was denied by the trial court. This decision will be reversed on appeal only if there has been an abuse of discretion. *People v Stephens,* 416 Mich 252, 265; 330 NW2d 675 (1982). Of the five requirements[27] that must be satisfied, we conclude that the misdemeanor offense of unlawful use fails to bear an "appropriate relationship" to the greater offense of possession with intent to deliver. An "appropriate relationship" exists if the greater and lesser offenses relate to the protection of the same interests and they are related in an evidentiary sense such that proof of the misdemeanor is necessarily presented as proof of the greater charged offense. *People v Steele,* 429 Mich 13, 19; 412 NW2d 206 (1987). However, proof of drug use is never *necessarily* presented as part of the proofs supporting possession with intent to deliver. *Id.,* pp 23-24. We find no error.

## VI

Defendant's final argument is that the trial

---

[27] To justify instructing the jury on a lesser included misdemeanor offense, five requirements must be met:

(1) there must be a proper request for that instruction;

(2) there must be an appropriate relationship between the greater and lesser offenses;

(3) the requested instruction must be supported by a rational view of the evidence;

(4) the defendant must have been given adequate notice if the prosecutor requests the instruction; and

(5) the instruction must not result in undue confusion or other injustice. *Stephens, supra,* pp 261-264.

court erred in failing to quash the habitual offender, fourth offense charge. He alleged in his motion that the stenographic notes of his prior guilty plea for attempted carrying a concealed weapon were indecipherable and, therefore, his current counsel could not determine whether this prior plea was constitutionally valid. The trial court denied the motion to quash, finding that defendant's inability to meet his burden of proving that a prior plea-based conviction was invalid does not create a presumption of invalidity.

We agree with the trial court's reasoning and conclude that it did not err in denying the motion to quash. We note that at no time has defendant even suggested or hypothesized relative to how the prior conviction might be invalid. Defendant does not even make a claim that he was denied counsel at the prior proceeding or was not informed of his rights. We refuse to speculate in this regard. On the record before us, we find no error in the trial court's ruling.

Affirmed.

Marilyn Kelly, J., concurred in the result only.