*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

RYAN RAY DEWEERD,

       Defendant-Appellant.

UNPUBLISHED
June 25, 2020

No. 345832
Cass Circuit Court
LC No. 18-010145-FH

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

A jury convicted defendant, Ryan Ray Deweerd, of possession of a controlled substance (methamphetamines) contrary to MCL 333.7403(2)(b)(*i*). Defendant now appeals as of right, and we affirm.

## I. BACKGROUND

In 2016, defendant was sentenced, in relevant part, to probation after he was convicted by plea of methamphetamine-related charges. Pursuant to the terms of his probation, he was not permitted to "use or possess any controlled substances or drug paraphernalia" without a valid prescription, "or be with anyone [he knew] to possess these items." He was also required to "allow the field agent into [his] residence at any time for probation supervision" and to permit searches of his person or property without a warrant "if the field agent has reasonable cause to believe [he had] items which violate[d] the conditions of [his] probation." In 2018, probation agent Valerie Lynn Tapia and two detectives performed a random compliance check of defendant's home. The only item of concern they found inside the home was a knife. However, in his driveway was an unlocked vehicle with its windows down. Defendant stated that he had driven the vehicle that day, but that it belonged to his mother. Defendant consented to a search of the vehicle.

In the front seat cupholder of the vehicle, in plain view, the law enforcement team found a clear, lidded container. Inside the container was a substance that the law enforcement team believed to be methamphetamine. Also inside the vehicle were a butane lighter, clothing belonging to defendant, and "tooters," which are a kind of straw commonly used for snorting drugs, with

-1-

"residue" at the end.[1]  A field test of the substance revealed it to be methamphetamine.  Defendant admitted that he was "currently a methamphetamine user," but he denied that he knew about the drugs or paraphernalia in the vehicle, and he was also adamant that they did not belong to his mother.  Defendant was arrested.  The day after his arrest, defendant was given a urine drug test, which showed him to be positive for methamphetamine and amphetamine.  A laboratory test confirmed the substance from the vehicle to be 2.540 grams of methamphetamine, with an estimated street value of $250.  One of the detectives explained that this was an unusually significant quantity of methamphetamine "for someone that's just a user."

At issue in this appeal is the trial court's admission of defendant's urine drug test, the details of which we will discuss further below.

## II.  PRESERVATION OF ISSUE

The prosecution initially argued that defendant forfeited any challenge to the admission of the drug test results.  At oral argument, the prosecution withdrew that argument.  However, this Court generally draws its own conclusions about whether an issue was preserved for appeal.  We conclude that defendant properly preserved an objection to the admission of the drug test results.  However, as to the specific ground of a discovery violation, defendant acquiesced in the trial court's remedy that was less severe than preclusion of the evidence.  Thus, we find defendant's challenge partially waived.

It is undisputed that the drug test results were not properly disclosed to defendant in discovery before trial pursuant to MCR 6.201.  During Agent Tapia's direct examination, defendant objected to her testimony regarding defendant's urine drug test as lacking foundation, and the trial court sustained the objection on hearsay grounds.  Tapia was then shown the drug test results as "Proposed Exhibit 1," and Tapia identified it as "our drug testing form" with defendant's name at the top and also bearing a handwritten note.  Defendant then timely and appropriately objected that he had never seen the document, whereupon the trial court excused the jury and gave defense counsel an opportunity to review the report.

Outside the jury's presence, the trial court confirmed with defense counsel that he had an opportunity to review the report.  Defendant then further objected that the report did not indicate what test was conducted, what standards it used, or how the test was conducted.  He also pointed out that the note suggested that a jail guard had performed the test, not Tapia, the testifying witness.  The trial court indicated that it shared some of defendant's foundational concerns.  Tapia explained that the form was standard, and it was common to write notes on such forms.  Some of the handwriting was an enumeration of the specific drugs for which defendant was tested.  Tapia explained that the reference to the jail guard was because she personally could not go into the bathroom with defendant to obtain the urine sample; rather, the guard went into the bathroom with defendant.  Tapia explained that she was present afterwards when defendant and the guard both signed the form, and she personally filled out or wrote notes on the form otherwise.

---

[1] The "residue" was apparently never tested.

Defendant then further objected that there was no foundation for the specific drug test used or "the science behind that." He also objected that Tapia appeared to lack any firsthand knowledge of the chain of custody of defendant's urine or of the actual testing of that urine, and she merely filled out the form "based on a test performed by somebody else after seeing the cup." The trial court overruled defendant's objection. The jury was brought back into the courtroom, and the prosecution formally moved to admit the test result document. Defendant renewed his objections, whereupon Tapia testified that the form was standard, the writing on the document was hers, she had personally witnessed defendant and the guard sign the form, and she personally witnessed the results of the drug testing because "they always bring it out to show us because we don't rely on the guards to read the test for us." Her reading of the test was that defendant "was positive for amphetamines and methamphetamine." Defendant renewed his original objection. The trial court ruled that it would treat defendant's objection "as a continuing objection to the admission of the document," but it admitted the results into evidence.

During cross-examination, Tapia explained that an officer was usually present when a urine sample was obtained, but she was "not allowed to be" present for obtaining the urine sample because she was female. Therefore, a male officer or county employee would obtain the sample. She explained that defendant and the guard were in the bathroom for at most five minutes, she observed them walk in and walk out, and there was no one else in the bathroom during that time who could have been tested. She also explained that although she was trained in how to administer a drug test and how to read the results, she did not know any of the science behind how the test worked. The prosecutor specifically objected that Tapia was neither a scientist nor an expert witness. Tapia explained that the results of drug tests were rarely sent out for confirmation because doing so was expensive and most people would admit to being on drugs when they saw a positive result.[2] She could not recall any occasion on which a drug test was sent out for confirmation and revealed to be wrong. She did not know how storage conditions might affect the drug tests, but her office kept all drug supplies in a specific location and checked to ensure they were not expired.

After Tapia finished testifying and was excused as a witness, defendant renewed his objection that he had not been provided the drug test results before trial. He pointed out that he also could not find anything in the police report or preliminary examination transcript discussing a drug test in jail. Importantly, however, defendant did not seek to have the test results excluded on that basis, but rather asked to be able to call a specific rebuttal witness who was not on his witness list. Over the prosecutor's objection, the trial court ruled that defendant would be permitted to call the witness. Ultimately, defendant declined to do so.

As the above summary shows, defendant timely raised an objection to the admission of the drug test report on numerous grounds, including foundation and a discovery violation. Because the trial court stated that it would treat the objection as continuing, we do not hold it against defendant that some portions of his objection were not presented to the trial court until after the document was admitted and after Tapia had finished testifying. Because the issue was presented to the trial court and is pursued on appeal, it is preserved. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). However, defendant ultimately did not request that

---

[2] Defendant made no such admission, but did sign the form signifying that the test had been taken.

the report be stricken on the basis of the discovery violation. Rather, defendant requested the opportunity to call a rebuttal witness, which the trial court granted over the prosecutor's objection. Defendant then thanked the trial court and stated that he had "[n]othing further." Defendant's failure to seek any further relief constitutes acquiescence in the trial court's remedy and thus constitutes a waiver, precluding seeking alternative relief on appeal.[3] *People v Pratton*, 79 Mich App 770, 771; 263 NW2d 15 (1977);[4] *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

However, context is critical. To the extent defendant acquiesced in the trial court's ruling, he clearly did so only in the context of his objection premised on the discovery violation. The trial court had already made a ruling as to defendant's objections on other grounds *and* stated that it would treat those objections as continuing. The issue preservation requirements do not obligate parties to engage in futile endeavors or to make disruptive nuisances of themselves to trial courts by continuing to complain about matters already disposed of. *People v Townsend*, 25 Mich App 357, 361; 181 NW2d 630 (1970); *Miller v Hensley*, 244 Mich App 528, 532 n 2; 624 NW2d 582 (2001). Thus, we conclude defendant waived any argument on appeal that the drug test results should have been excluded solely as a discovery violation sanction.[5] However, we do not conclude that defendant failed to preserve any other basis for seeking exclusion of the drug test results.

---

[3] We emphasize that recognizing and accepting a trial court's adverse ruling, or accepting a trial court's partially-adverse ruling as better than nothing and deciding not to "push one's luck," is not the kind of acquiescence that would constitute a waiver. The touchstone is that defendant did not make the request at all on this particular ground and acquiesced in the trial court's grant of precisely what defendant did request.

[4] Published opinions of this court decided before November 1, 1990, are not binding under the "first out rule," MCR 7.215(J)(1), but they are nevertheless precedential under the rule of stare decisis, MCR 7.215(C)(2), and they are therefore more than merely persuasive. See *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019).

[5] In any event, preclusion of evidence is an "extreme" sanction for a discovery violation and should not be imposed for mere negligence. *People v Merritt*, 396 Mich 67, 82; 238 NW2d 31 (1976); *People v Callon*, 256 Mich App 312, 328; 662 NW2d 501 (2003). Even if we were to consider this ground merely forfeited rather than waived, see *People v McDonald*, 293 Mich App 292, 295; 811 NW2d 507 (2011), defendant does not present any argument that the prosecutor's discovery violation was, for example, intentional, repeated or otherwise egregious. Furthermore, in crafting a remedy for a discovery violation, trial courts must seek to balance the interests of the parties, the courts, and the public under the circumstances of the case, and we review the court's resolution for an abuse of discretion. *People v Davie*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997). A lesser sanction than preclusion of evidence is preferable where doing so adequately protects the parties' interests. See *People v Burwick*, 450 Mich 281, 298; 537 NW2d 813 (1995). Defendant does not provide any argument explaining why the trial court's lesser sanction of granting him time to review the evidence and an opportunity to call an unendorsed rebuttal witness was so inadequate under the circumstances that it would constitute an abuse of discretion.

### III. RELIABILITY OF DRUG TEST

For the reasons discussed above, we therefore address defendant's argument that the drug test results should have been excluded, to the extent defendant premises that argument on his assertion that the test was inadmissible because it lacked scientific reliability. Nevertheless, we disagree with defendant.

This Court reviews "for an abuse of discretion a trial court's decision to admit or exclude evidence." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018) (quotation marks and citation omitted). A trial court's interpretation of a rule of evidence is a question of law, and we review such questions de novo. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). Further, a preserved trial error in the admission of evidence does not constitute grounds for reversal "unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

We note at the outset that Tapia was not presented as an expert witness, nor did her testimony resemble expert testimony. The prosecution expressly disclaimed, in front of the jury, that Tapia had any scientific expertise, which Tapia confirmed. Tapia explained that although she knew how the drug test should be conducted and what the drug test did, she had no idea how the drug test actually worked. She did not know how storage conditions might affect the tests, but she did know that her office followed storage procedures. Thus, defendant's argument premised on MRE 702, which establishes prerequisites for the admission of expert witness testimony, is simply inapposite. The trial court's "gatekeeping" role under that evidentiary rule only applies to expert testimony of scientific, technical, or other specialized knowledge introduced to assist the jury in understanding the evidence. See MRE 702; see also *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 589-590; 113 S Ct 2786; 125 L Ed 2d 469 (1993); see also *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 779-780; 685 NW2d 391 (2004). The trial court was not required to ensure that Tapia's testimony was scientifically reliable.

In contrast, this Court, in *Gard v Mich Produce Haulers*, 20 Mich App 402, 407-408; 174 NW2d 73 (1969), outlined the following foundational requirements that are necessary to admit chemical test analyses under MCL 257.625a[6]:

---

[6] MCL 257.625a(6) now provides rules for admission of "blood, urine, or breath" tests under the Motor Vehicle Code, but it only addressed blood when *Gard* was decided, among various other amendments. Both parties seemingly agree that the statute is applicable by analogy despite being part of the Motor Vehicle Code. Whether or not we agree with that proposition, we do agree with the prosecution that this Court in *Gard* was not concerned with interpreting the statute, and its focus on blood was only coincidental. Rather, *Gard* was truly concerned with setting forth general standards for ensuring that biological samples were pure and any tests conducted on those samples were reliable in *any* case. See *Gard*, 20 Mich App at 407. We therefore deem *Gard* applicable irrespective of the statute.

[T]he party seeking introduction must show (1) that the [chemical] was timely taken (2) from a particular identified body (3) by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments used were sterile, (5) that the blood taken was properly preserved or kept, (6) and labeled, and (7) if transported or sent, the method and procedures used therein, (8) the method and procedures used in conducting the test, and (9) that the identity of the person or persons under whose supervision the tests were conducted be established.

"[T]he accuracy of the methods used is a requisite element of establishing a sufficient foundation" for the reliability of a drug test. *People v Lucas*, 188 Mich App 554, 580; 470 NW2d 460 (1991). "However, the trial court is afforded considerable discretion in deciding whether a proper foundation has been laid." *Id*. (citation omitted). Thus, the *Gard* factors are broadly applicable to this matter, but they need not be satisfied in a mechanistic or slavish manner.

Most of the *Gard* factors are clearly satisfied by Tapia's testimony as already summarized above. To reiterate and expand on that summary, Tapia explained that defendant's urine sample was obtained from defendant within 24 hours of his arrest, defendant was directly supervised by a person authorized to do so while giving the sample, and the cup into which defendant urinated was kept in a sealed container until used. Tapia had been trained by her supervisor and staff in how to administer the drug test, and the office followed storage procedures for the tests and checked whether they were expired. Tapia explained that the test itself was a piece of paper placed into the urine, and markings would either appear or not appear on the paper to indicate a positive or negative result. Tapia personally observed the results of that test. It is unclear from Tapia's testimony how the paper came to be placed into defendant's urine. Nevertheless, her testimony strongly implies that she placed it into the urine personally or she personally observed the placement.[7] Tapia personally filled out the results form, which defendant and the guard also signed to indicate that the test had been performed. Finally, Tapia explained that although such tests were rarely sent to a laboratory for confirmation, she had been working at her job for more than seven years and was unaware of any such test ever being found wrong.

There is no evidence that defendant's urine was labelled, but the evidence overwhelmingly indicates that doing so was unnecessary. The evidence indicates that defendant's urine was not obtained by "an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician," but again we can conceive of no reason why doing so would have been necessary under the circumstances. Thus, although not all of the *Gard* factors were specifically satisfied, Tapia's testimony was adequate for admission of the results under the trial court's "considerable discretion in deciding whether a proper foundation has been laid." *Lucas*, 188 Mich App at 580.

## IV. ANY ERROR WAS HARMLESS

---

[7] Neither party was able to provide any clarification at oral argument, but neither party challenges this presumption.

We finally observe that even if the admission of the urine drug test results had been erroneous, any such error was extremely unlikely to have affected the outcome of the proceedings. *King*, 297 Mich App at 472. Defendant was charged only with possession of methamphetamines. The trial court properly instructed the jury that possession did not necessarily require ownership. See M Crim JI 12.7. As noted above, a significant amount of methamphetamine was found in the vehicle in defendant's driveway. The methamphetamine was in plain view of the driver, along with various paraphernalia. Defendant stated that he was the only possessor of the vehicle that day and was "currently a methamphetamine user." Defendant incongruously denied knowledge of the methamphetamine while also insisting that the methamphetamine did not belong to his mother. The methamphetamine found in the vehicle was both field-tested *and* independently tested by a laboratory. Thus, the substance in the vehicle unambiguously was methamphetamine, and defendant admitted that he was "currently a methamphetamine user," and both facts significantly bolstered the reliability of the urine drug test result. In any event, even if evidence of the urine drug test results had been excluded, the evidence was overwhelming that defendant was in possession of methamphetamine. The urine drug test result was, at the most, cumulative of other evidence that was beyond serious challenge and more than a sufficient basis for convicting defendant of the charged offense. See *People v Matuszak*, 263 Mich App 42, 52; 687 NW2d 342 (2004). The urine drug test was therefore of relatively little importance, and any error in its admission was harmless.

Affirmed.

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan