*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEREMIAH DEJUAN ABCUMBY-BLAIR,

Defendant-Appellant.

FOR PUBLICATION
December 22, 2020
9:00 a.m.

No. 347369
Oakland Circuit Court
LC No. 2018-266896-FH

Before: SWARTZLE, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

This case arises from police surveillance of a suspected drug house. Defendant, Jeremiah Dejuan Abcumby-Blair, appeals as of right his jury trial convictions of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*), possession of less than 25 grams of fentanyl, MCL 333.7403(2)(a)(*v*), carrying a concealed weapon, MCL 750.227(2), being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and operating a motor vehicle with a suspended license, second offense, MCL 257.904(3)(b). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 9 to 30 years' imprisonment for his convictions of possession with intent to deliver cocaine, possession with intent to deliver heroin, carrying a concealed weapon, and felon-in-possession, 9 to 15 years' imprisonment for his convictions of possession with intent to deliver marijuana and possession of fentanyl, two years' imprisonment for each felony-firearm conviction, and 278 days in jail, time served, for operating with a suspended license. Finding no reversible errors, we affirm.

## I. BACKGROUND

On April 13, 2018, Oakland County Sheriff's Deputy Reuben Garcia was participating in a surveillance of a suspected drug house at 163 Seward Street in Pontiac. Garcia observed defendant pull up in a car, approach the porch and pause briefly as if using a key for entry, enter the house for a few minutes, and then leave. Garcia observed defendant drive to a nearby party

store parking lot known for drug trafficking. Defendant maneuvered his car alongside another car and engaged in a hand-to-hand transaction with the occupant, which Garcia believed was a drug sale. As Garcia watched from his surveillance location, Oakland Sheriff's Deputy Charles Janczarek was summoned to confront defendant in the parking lot and advise him of their investigation, at which time defendant admitted he was in possession of marijuana.[1] Janczarek searched defendant's pockets and found among other things a baggie of marijuana, a baggie of what appeared to be crack cocaine—which Garcia field tested and found to be positive—two cell phones, and a house key that turned out to be for 163 Seward Street. Deputies arrested defendant. Garcia opened defendant's driver's side car door and found in the side pocket a Ruger firearm with a bullet in the chamber. Deputies obtained a search warrant for the house and seized marijuana, cocaine, heroin, fentanyl, ammunition, cash, equipment commonly used in drug manufacturing, and mail in a bedroom that was addressed to defendant at the Oakland County Jail. The jury convicted defendant of all charges. Defendant now appeals.

## II. *BRADY* VIOLATION/NEWLY DISCOVERED EVIDENCE

Defendant argues that the prosecution violated his right to due process by failing to disclose that Janczarek had, according to defendant, "a documented history of making false statements pertaining to his investigations, and specifically pertaining to his affidavits for search warrants involving drug investigations." Defendant contends that the prosecution had a duty under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), to disclose this information and that failure to do so undermines confidence in the jury's verdict. While impeachment evidence should have been disclosed, for the reasons explained below we conclude that reversal of defendant's convictions is not required.

Defendant did not preserve this issue for appellate review by moving in the trial court for a new trial or for relief from judgment. *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005). Therefore, our review is for plain, i.e., clear or obvious, error affecting defendant's substantial rights. *People v. Dickinson*, 321 Mich App 1, 15; 909 NW2d 24 (2017). A defendant's substantial rights are affected if the plain error "affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (quotations marks and citation omitted; alteration in original).

To establish a *Brady* violation, a defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). The Michigan Supreme Court has explained each of these requirements as follows:

> The government is held responsible for evidence within its control, even evidence unknown to the prosecution, *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131

---

[1] The event occurred before Michigan legalized recreational marijuana use.

L Ed 2d 490 (1995), without regard to the prosecution's good or bad faith, *United States v Agurs*, 427 US 97, 110; 96 S Ct 2392; 49 L Ed 2d 342 (1976) ("If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor."). Evidence is favorable to the defense when it is either exculpatory or impeaching. *Giglio v United States,* 405 US 150, 154; 92 S Ct 763; 31 L Ed 2d 104 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule [of Brady]."), quoting *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v Bagley,* 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985). This standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . ." *Kyles*, 514 US at 434; 115 S Ct 1555. The question is whether, in the absence of the suppressed evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. *Id*. at 436; 115 S Ct 1555. [*Chenault*, 495 Mich at 150-151.]

Before turning directly to our analysis of defendant's *Brady* claim, some background information is required. Defendant's claim arises primarily from a prosecutor's statement made during a hearing in a case we remanded to the trial court, *People v Williamson*, unpublished order of the Court of Appeals, issued September 27, 2017 (Docket No. 331075). Our remand was based on what had transpired in another case, *People v Dukes*, Oakland Circuit Court (15-255948-FH). It came to light in *Dukes* that Janczarek had made false statements relative to a search warrant. As this Court explained:

Janczarek testified that he had placed a GPS tracking device on Duke's [sic] vehicle pursuant to a warrant and that the device provided inculpatory information. Defense counsel advised the court that he had never been informed about the use of a GPS device and had never been provided a copy of the warrant permitting the tracking. After argument, the *Dukes* trial court declared a mistrial and scheduled an evidentiary hearing to determine, *inter alia*, whether the warrant Janczarek testified existed had in fact ever been issued and to thereafter consider whether the mistrial would be with prejudice [*People v Williamson*, unpublished per curiam opinion of the Court of Appeals, issued September 5, 2019 (Docket No. 331075), p 3.]

While *Dukes* was unfolding, Williamson's appeal from a 2015 conviction was pending in this Court. When evidence of Janczarek's conduct in *Dukes* came out, Williamson filed a motion in this Court seeking remand to the trial court. Williamson argued that had the trial court considered the *Dukes* evidence, there was a reasonable probability that it would have upheld the challenge he lodged to the search warrant obtained by Janczarek in his case. Williamson had challenged subsection 7(E) of Janczarek's sworn search warrant affidavit, which stated, "During

a period of time covering over the past thirty days the informant has provided information that has led to the issuance of one search warrant by a judge of the 50th District Court." *Williamson*, unpub op at 2. This Court remanded the matter for the trial court to consider the challenged statement in light of the *Dukes* evidence. On remand, the prosecutor conceded in the trial court that Janczarek's statement in subsection 7(E) "was an 'inaccurate statement' and that actually the confidential informant had never previously provided information that led to the issuance of a search warrant." *Id*. at 3. It appears to be this statement that the present defendant asserts the prosecutor in his case had a duty to disclose under *Brady*.

Meanwhile, the *Dukes* case reached its end. By the time *Williamson* returned to the circuit court on remand,

> the trial court in *Dukes* had held a hearing and determined that Janczarek's testimony at the evidentiary hearing in that case was not credible and found that no warrant had been issued despite Janczarek's testimony that one had been issued. At the hearing in *Dukes*, Janczarek testified that he had obtained a search warrant for the tracking device, but he could not produce the signed warrant or a copy of it. At one point he testified that he had saved it on a computer "thumb drive" but that he could not locate the device. He also testified that the warrant was in the "arrest packet" he provided to the prosecutor's office and further that he discussed the warrant with an assistant prosecutor whom he named. The assistant prosecutor testified to the contrary, stating that the warrant was not in the arrest packet and that she had not had any discussion with Janczarek regarding such a warrant. The court found that the prosecutor's testimony was credible, that Janczarek's testimony was not credible and that the search warrant he testified he obtained had in fact never existed. [*Id*. at 3-4.]

The present defendant argues on appeal that the prosecutor in his case should have disclosed the concession made on remand by the prosecutor in *Williamson* that Janczarek had made a false statement in his search warrant affidavit. However, it is not clear to us that the prosecutor's statement in *Williamson* was necessarily *Brady* material, especially since the trial court, after taking testimony from Janczarek, determined that subsection 7(E) of the affidavit was inaccurate, but that the deputy had not intended to make a false statement. *Id*. The significance of the prosecutor's statement emerged only two years later, when this Court found the trial court's factual determination to be clear error and held that the search warrant affidavit statement challenged in *Williamson* was "objectively untrue" and that Janczarek had "knowingly and intentionally made a false statement in the search warrant affidavit." *Id*. at 6.

Defendant is on more solid ground when he implies that the prosecutor also had a duty under *Brady* to reveal that the trial court had found Janczarek's testimony in *Dukes* not credible. That Janczarek had testified untruthfully in *Dukes*, as determined by an Oakland Circuit Court judge, was evidence favorable to defendant that was within the prosecution's control, *Chenault*, 495 Mich at 150, and defendant was not required to exercise due diligence to obtain the information from another source, *id*. at 152. Accordingly, the prosecution had a duty to disclose this evidence to defendant. Nevertheless, although the prosecution violated its duty to disclose this evidence, we find no *Brady* violation because defendant has not established the materiality of the evidence with respect to the instant case. See *id*. at 150-151.

-4-

As previously indicated, "[t]o establish materiality, a defendant must show there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Chenault*, 495 Mich at 150 (quotation marks and citation omitted). The question with regard to materiality is "whether, in the absence of the suppressed evidence, the defendant 'received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Id*., quoting *Kyles*, 514 US at 434; 115 S Ct 1555. Defendant contends that had the prosecutor informed him of Janczarek's untruthfulness, he could have used the information to successfully challenge the search warrant issued for 163 Seward Street and impeach Janczarek's credibility. We are unpersuaded that, in the absence of the suppressed evidence, defendant's trial verdict was unworthy of confidence.

Defendant did not identify in the trial court, nor does he identify in his appellate brief, any factual challenges to the search warrant affidavit in this case. In a motion filed in the trial court to suppress the evidence seized pursuant to the warrant, defendant did not attack any specific portions of the affidavit; rather, he argued that, taken as a whole, the affidavit did not support a finding of probable cause. In denying defendant's motion, the trial court stated that the information in the affidavit was "specific, [and] had multiple layers . . . providing information to a neutral arbiter, the district court judge, that would give rise to the standard that needs to be met, which is that there is a substantial basis for a finding of probable cause." On appeal, defendant attempts to undermine the reliability of the affidavit by stating that, although Oakland County Sheriff's Deputy Brandon Scruggs drafted the search warrant affidavit, he based it on Janczarek's investigation. Contrary to defendant's assertion, however, the affidavit indicates that Garcia played an equally, if not more, important role in collecting the information that led to defendant's arrest and the discovery of drugs in his pockets. It was Garcia who observed defendant appear to use a key to enter the house on Seward Street and who saw him engage in a hand-to-hand suspected drug transaction in the parking lot of the nearby party store. Whereas the defendant in *Williamson* challenged a specific factual statement in the search warrant affidavit sworn to by Janczarek in that case, the present defendant does not identify any specific infirmity in the search warrant affidavit potentially traceable to Janczarek.[2] In light of this, we find unconvincing defendant's assertion that information regarding

---

[2] In the search warrant affidavit, Scruggs avers that he learned from Janczarek that he and another officer surveilled 163 Seward Street within 30 days of the incident at issue. In a motion to remand filed in this Court, defendant's appellate counsel attests in an affidavit that FOIA requests produced no reports of previous surveillance at the Seward Street house. This is not surprising. Janczarek testified at trial that he and Sergeant Hix had surveilled the house within the last 30 days as part of their general observation of the area, but did not write any reports of their activity. Further, the testimony of all three deputies indicated that they understood "surveillance" to encompass everything from "sitting in a scout car with a pair of binoculars all the way to sitting on houses . . . ." Defendant's appellate counsel also notes that the report of the incident written by Janczarek states that the person to whom Janczarek spoke when he answered defendant's cell phone (which will be discussed later in this opinion) was "detained," but his FOIA request produces no record indicating that the person had been arrested. Janczarek testified at trial that after the caller arrived at 163 Seward Street, he told him "to walk down to the party store because I was trying to get him away." The caller then walked an estimated 70 yards to the party store, where he was "detained."

Janczarek's untruthfulness in *Williamson* and *Dukes* would have resulted in a finding of no probable cause to issue the warrant or in the suppression of the evidence obtained pursuant to the warrant. Defendant implies that a different outcome would have been probable because the alleged *Brady* information would have "alerted the defense to scrutinize aspects of the investigation that may otherwise have been taken for granted, such as the validity of the prior surveillance or the legitimacy of the alleged call." Presumably, defendant alludes to his appellate counsel's discovery that no reports of prior surveillance had been filed and no record of the caller's arrest existed. As discussed in footnote 2, however, neither of these facts is alarming in light of the record, nor do they support a reasonable probability that, had Janczarek's untruthfulness been disclosed to defendant, the result of the proceeding would have been different. See *Chenault*, 495 Mich at 150.

Regarding the trial, the most important factual issue the jury had to decide was whether defendant had connections to 163 Seward Street sufficient to establish his constructive possession of the drugs and drug paraphernalia recovered from the house. Constructive possession of narcotics may "be proven by the defendant's participation in a 'joint' venture to possess controlled substances." *People v Wolfe*, 440 Mich 508, 521; 489 NW2d 748 (1992). Evidence that a residence appears to be solely used for the manufacture and distribution of crack cocaine, and that a defendant possesses a key that opens the lock to the apartment, has been deemed sufficient to establish the defendant's constructive possession of the drugs found therein. See *Wolfe*, 440 Mich at 518-519.

As already noted, Garcia testified that he observed defendant briefly enter 163 Seward Street, where he appeared to open the door with a key, before proceeding to a nearby parking lot where he made a hand-to-hand exchange with the driver of another car. Janczarek placed defendant under arrest, searched his pockets, and found 26.5 grams of marijuana, 2.7 grams of crack cocaine, and a house key, all of which was entered into evidence at trial. Upon executing the search warrant for 163 Seward Street, deputies determined that the key found in defendant's pocket opened the handle lock and the deadbolt. Scruggs testified that, in one of the bedrooms, he found a case for a laptop computer that contained two cards addressed to defendant, a piece of mail addressed to defendant, and receipts and a "certificate of completion" that contained defendant's name. This evidence, if believed, was sufficient to establish defendant's constructive possession of the drugs at 163 Seward Street. *Id*.

Defendant contends that the alleged *Brady* evidence could have been used to impeach Janczarek at trial. However, the trial transcripts show that the bulk of Janczarek's testimony concerned his identification for the jury of the physical evidence seized from 163 Seward Street and of photographs taken at the house, and his expert testimony regarding street-level drug

---

While "detained" can mean "arrested," there is nothing in Janczarek's testimony to suggest that officers intended to or did arrest the caller. So, again, the fact that there are no arrest records is not surprising. Defendant's appellate counsel challenged none of the other information the affiant attributed to Janczarek.

trafficking.[3]  Defendant's connection to the house on Seward Street was established through the testimony of Garcia and Scruggs and physical evidence, including a key to the house found in defendant's pocket and items in the house linked to him.  Evidence that Janczarek made false statements regarding search warrants in prior cases generally impeaches his credibility, but it does not undermine the physical evidence connecting defendant to 163 Seward Street or the testimony of Garcia and Scruggs.  Given the physical items, photographs, and the testimony of multiple witnesses that constituted case-specific evidence of defendant's guilt, we cannot say that suppression of evidence regarding Janczarek's untruthfulness in other cases undermines confidence in the verdict in this case.  Thus, even though the prosecutor suppressed impeachment evidence within her control, defendant's claim of a *Brady* violation fails because he has not established the materiality of the suppressed evidence.  See *Chenault*, 495 Mich at 150.

In the alternative, defendant argues that this Court's unpublished opinion in *Williamson* constitutes newly discovered evidence.  To establish that newly discovered evidence requires a new trial, a defendant must show that "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).

As previously indicated, this Court held in *Williamson* that Janczarek's statement in subsection 7(E) of his search warrant affidavit was "objectively untrue" and that Janczarek had offered no "credible explanation from which to conclude that he did not intentionally place false information in the affidavit." *Id*. at 5.  In light of this newly discovered evidence, defendant urges this Court to at least remand the case to the trial court to allow the court to reassess defendant's motion to suppress the evidence obtained by the search warrant.  However, defendant fails to make any connection between this Court's holding regarding Janczarek's untruthfulness in *Williamson* and the search warrant affidavit or trial testimony in this case.  Neither in the trial court nor in this Court has defendant pointed to any specific portion of the affidavit potentially tainted by Janczarek's input, nor has he offered either evidence or argumentation that would lead us to believe that this Court's holding in *Williamson* makes it probable that the trial court would find the warrant invalid and suppress the evidence collected pursuant to the warrant.  Nor, in light of the evidence presented at trial, are we persuaded that the *Williamson* holding would make a different outcome in defendant's trial probable.  For these reasons, we conclude that defendant has failed to establish that he is entitled to a new trial based on this newly discovered evidence.  See *Cress*, 468 Mich at 692.

---

[3] In his brief on appeal defendant admits that there "is no dispute that the house at 163 Seward contained drugs and items consistent with delivering drugs."  In other words, he does not claim that Janczarek could have been impeached about evidence found in the house when searched.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises several claims of ineffective assistance of counsel. He preserved this issue for appellate review by filing in this Court a motion for remand to the trial court for a *Ginther*[4] hearing. We denied defendant's motion. *People v Abcumby-Blair*, unpublished order of the Court of Appeals, entered February 7, 2020 (Docket No. 347369). Therefore, our review is for errors apparent on the record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Findings of fact "are reviewed for clear error," while "constitutional determinations are reviewed de novo." *Id*. A finding is clearly erroneous if this Court is "left with a definite and firm conviction that the trial court made a mistake." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

In order to establish the right to a new trial premised on ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant's first claim of ineffective assistance of counsel pertains to testimony from Janczarek that when a "flip-style" cell phone he seized from defendant's pocket began to ring, he answered it. Janczarek further testified that it was "a common practice for us to monitor those cell[]phones for text and/or phone calls . . . ." He explained:

> I spoke to the person on the other line and he asked for 20 of dog, which is common street slang for heroin. . . . I kind of played a game with him on the phone for a little bit, and he showed up over at [163] Seward. . . . Initially, he went to the back door and knocked. We called him back and told him to go to the front door. He knocked there. Then I told him to walk down to the party store because I was trying to get him away. It kind of helped us out knowing that there wasn't anybody else in the house. He walked away. We detained him, and then we were able to determine [that] the phone number that he called on was the phone in his possession.[5]

Defendant asserts that Janczarek violated his Fourth Amendment right to be free from unreasonable searches and seizures when he opened defendant's cell phone, answered it, and

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] It is apparent from Janczarek's testimony that he opened defendant's cell phone and either answered a call from or used it to call one of defendant's connections three times.

impersonated defendant to arrange a heroin transaction with the caller, and that trial counsel was ineffective for failing to move to suppress or to object to Janczarek's testimony regarding the phone call. Defendant relies for authority on *Riley v California*, 573 US 373; 134 S Ct 2473; 189 L Ed 2d 430 (2014). In *Riley*, the United States Supreme Court held that, in the context of searches of cell phone data, officer safety and the need to prevent destruction of evidence do not justify applying the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement. The prosecution argues, contrariwise, that *Riley* does not apply to this case because Janczarek did not scroll through the contents of defendant's flip phone, he merely answered an incoming call and spoke to the caller. In light of the Supreme Court's assessment in *Riley* of the balancing of interests between an individual's right to privacy and the need for the promotion of legitimate governmental interests when it comes to cellular telephones and the search incident to arrest doctrine[6], we believe defendant has the better argument.

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Riley*, 573 US at 381(quotation marks and citations omitted). A search occurs under the Fourth Amendment when "the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v United States*, 533 US 27, 31-33, 121 S Ct 2038, 150 LEd2d 94 (2001).

Neither party provides authority directly addressing whether, after the Supreme Court's analysis of the unique nature of cell phones in *Riley*, answering an arrestee's cell phone without the arrestee's consent constitutes a search under the Fourth Amendment.[7] Defendant analogizes

---

[6] See *Riley*, 573 US at 385.

[7] In *Riley*, the Supreme court analyzed two cases when ascertaining whether the search incident to arrest doctrine applies to searching digital content on a cell phone. *Riley*, 573 US at 378. Although it concluded that absent exigent circumstances "the search incident to arrest exception does not apply to cell phones," it was focused on accessing digital content as compared to answering a defendant's cell phone. *Id*. at 402.

David Riley was arrested following a routine traffic stop for driving with expired registration plates, and it was discovered that his license had been suspended. *Id*. The police officer searched Riley incident to his arrest and seized a "smart phone" from Riley's pants pocket. The officer accessed information on the phone, presumably from Riley's text messages or contacts, that led to his being suspected of gang involvement. *Id*. at 379. Two hours after Riley's arrest, an officer who specialized in gangs searched Riley's phone again, and among the data he viewed, he looked at Riley's photos and videos. *Id*. Riley was ultimately charged with and convicted of multiple counts associated with gang involvement and a prior shooting, and testimony and evidence at trial included information gleaned from Riley's phone. *Id*. at 379.

The companion case involved defendant Brima Wurie. A police officer performing routine surveillance observed Wurie make an apparent drug sale from a car. *Id*. at 380. Officers arrested Wurie and took him to the police station, where they seized two cell phones from Wurie's person. One phone, a "flip phone," kept receiving calls, and the front display noted that the calls were coming from "my house." *Id*. When they opened the phone, they saw a picture of a woman and a baby. By pressing one button, they accessed the phone's call log and obtained a phone number

the act to conducting a search of the phone's contents, and the prosecution invokes *Commonwealth v Santana*, 92 Mass App Ct 1107; 94 NE3d 435 (2017). In *Santana*, the Massachusetts appeals court seemed to suggest that the mere answering of an incoming phone call (initiated by another officer) did not constitute a search, but ultimately declined to resolve the question, concluding that even if the police officer's answering the defendant's cell phone constituted a search, any error in admitting evidence obtained from the call was harmless. However, in a recently published decision, the same court observed that a police officer's authority to seize an arrestee's cell phone "does not extend to manipulating the phone[,]" and that "[a]nswering a ringing phone constitutes a search." *Commonwealth v Barrett*, 97 Mass App Ct 437, 440; 148 NE3d 1217 (2020). In addition, the Pennsylvania Supreme Court has held that accessing *any* information from a cell phone without a warrant contravenes the United States Supreme Court's decision in *Riley*. *Commonwealth v Fulton*, 645 Pa 296, 302; 179 A3d 475 (2018); see also *id*. at 316-317 (observing that the *Riley* Court held "that in the absence of an applicable exception, any search of a cell phone requires a warrant. This is because, like one's home, an individual's expectation of privacy is in the cell phone itself, not in each and every piece of information stored therein.).[8] "While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Walker*, 328 Mich App 429, 444-45; 938 NW2d 31 (2019) (quotation marks and citation omitted).

In *Riley*, the Supreme Court rejected the idea of government agency protocols as a way to balance privacy interests with what information on a person's cell phone would be considered within the proper scope of a search incident to arrest. *Riley*, 573 US at 398. Instead, it held that "our general preference [is] to provide clear guidance to law enforcement through categorical rules. If police are to have workable rules, the balancing of competing interests must in large part be done on a categorical basis—not in an ad hoc, case-by-case fashion by individual police officers." *Id*. (quotation marks and citation omitted). With that clean-line approach in mind, in the present case, we are persuaded that an arrestee has a reasonable expectation of privacy in his or her cell phone, and that the government's act of answering the phone without the arrestee's consent and without a warrant constitutes a search under the Fourth Amendment.

---

associated with "my house," which they entered into an online phone directory to discover the associated address, ultimately leading them to defendant's home. *Id*. A search warrant was obtained and defendant's apartment was searched, leading to drug charges and subsequent convictions. *Id*. In other words, the Supreme Court did not directly address in either Riley's or Wurie's case whether answering and using a cellular telephone seized from someone's person constitutes a search under the Fourth Amendment.

[8] In *Fulton*, the Pennsylvania Supreme Court concluded that the investigating detective conducted three distinct searches of the defendant's cell phone without a warrant by engaging in the following actions: 1) powering on the defendant's flip phone, which the court likened to opening the door to a home; 2) obtaining the phone's assigned number; and 3) monitoring incoming calls and text messages, including answering one of the calls. *Fulton*, 645 PA at 318-319. The court concluded, "[t]he rule created by *Riley/Wurie* is exceedingly simple: if a member of law enforcement wishes to obtain information from a cell phone, get a warrant." *Id*. at 319.

Prior to *Riley*, various courts that had concluded that "a person does not have a legitimate expectation of privacy in incoming calls on his telephone . . . rested that conclusion on the ground that a person does not have a privacy interest in conversations to which he is not a party." *United States v De La Paz,* 43 F Supp 2d 370, 372 (SDNY, 1999). This is true for one of the cases on which the prosecution relies, *People v Lucas*, 188 Mich App 554; 470 NW2d 460 (1991). In *Lucas*, this Court held that an officer did not violate the defendant's Fourth Amendment rights when he answered the defendant's car phone without a search warrant because the defendant "has no reasonable expectation of privacy with regard to conversations in which he did not participate." *Lucas*, 188 Mich App at 577. However, as one district court has pointed out, this reasoning "confuses the privacy interest invaded by a search alone with the interest in whatever is uncovered by a search." *De La Paz*, 43 F Supp 2d at 372. Related to this is the pervasiveness of cell phones in contemporary society, their intimate association with their users, and their technological capabilities.

Regarding a person's privacy interest in the fact of a call, a federal district court explained in *De La Paz*:

> [A]sserting that a defendant has no privacy interest in the substance of a conversation between a law enforcement agent and a caller does not resolve whether the defendant has a privacy interest in whether that conversation should occur in the first place. The relevant question is not whether a search necessarily uncovers something of a personal or private nature, but rather whether it might— and whether one must invade a legitimate privacy interest in order even to find out. [*Id*.]

In the case at bar, regardless of the privacy interest defendant may or may not have had in the conversation that ensued when Janczarek answered the cell phone, he had a legitimate privacy interest in the fact that he received a call on his phone and in the identity of the caller. See *id*. at 372. This is particularly true given the intimate association of cell phones with individual users, who can keep track of a significant range and amount of private information on even the most basic of cell phones. See, e.g., *Riley*, 573 US at 395 (noting that "[a]ccording to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower."). Just monitoring and answering a "flip-style" phone like defendant's reveals not only the defendant's contacts, but also information that a defendant might have added to his contacts, including a photograph, name, or other identifying information. See *Fulton*, 645 Pa at 319. Thus, simply answering defendant's phone gave Janczarek access to more than the caller, it provided him with private information that he did not have before.[9]

---

[9] Acknowledging that its decision would impact law enforcement's ability to combat crime, the Supreme Court noted in *Riley* that "[p]rivacy comes at a cost." *Riley*, 573 US at 401. But it also pointed out that information on a cell phone is not immune from a search, just that "a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Id*. "Our cases have historically recognized that the warrant requirement is an important working part

In light of the personal nature and significant capabilities of today's cell phones, we find persuasive the foregoing arguments of federal courts and the courts of sister states and conclude that Janczarek's answering defendant's ringing cell phone constituted a search under the Fourth Amendment. Consequently, we also conclude that Janczarek's testimony regarding the phone call was inadmissible, and no strategic motive can explain trial counsel's failure to object to that testimony. Accordingly, trial counsel's failure to move to suppress the evidence or to object to it constituted objectively deficient performance. See *Trakhtenberg*, 493 Mich 51.

However, even if defendant has proved the first prong of this claim of ineffective assistance of counsel, he has not proved the second. Defendant has not demonstrated prejudice from trial counsel's deficient performance. Given the other evidence presented at trial, Janczarek's testimony regarding the telephone call was unnecessary to prove beyond a reasonable doubt that defendant was involved in the drug-trafficking operation at 163 Seward Street. Thus, defendant has failed to show that, but for his attorney's failure to object to Janczarek's testimony about the cell phone call, there is a reasonable probability of a different outcome. See *id*. Having failed to meet his burden to establish both prongs of his ineffective assistance of counsel claim, defendant's claim must fail. See *id*.

Defendant next argues that he received ineffective assistance from his trial attorney when she erroneously advised him that his prior convictions could be used to impeach him, and thus deprived him of his right to testify in his own defense by trial. Defendant has failed to establish the factual predicate of his claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). He has produced no evidence that trial counsel made such statements, and the existing record provides no reason to infer that she did. In addition, defendant has not identified any exculpatory evidence that he would have introduced through his testimony. Therefore, assuming arguendo that trial counsel gave defendant objectively deficient advice about the wisdom of testifying in his own defense, defendant has failed to show that, but for counsel's advice, there is a reasonable probability that the outcome of the proceedings would have been different. Accordingly, this claim of ineffective assistance of counsel must fail.

For his final claim of ineffective assistance, defendant argues that his trial counsel performed deficiently by failing to object when deputies testified that mail found at 163 Seward Street was addressed to defendant at the Oakland County jail. One of the jury questions submitted to Scruggs after his testimony was how he knew that defendant resided at the house on Seward Street. The deputy noted, among other things, that mail addressed to defendant was found at the house. Following up on the deputy's reply, the court asked, "Do you recall how the Defendant's mail was addressed?" Scruggs replied, "It was addressed to Mr. Abcumby-Blair and I believe the address was – I believe the Oakland County Jail." Later, Janczarek was called on to explain why documents addressed to defendant at an address other than Seward Street were significant enough to be taken into evidence. The deputy's explanation implied that letters addressed and delivered to defendant "in the jail" but found at 163 Seward Street likely were brought there by defendant.

---

of our machinery of government, not merely an inconvenience to be somehow weighed against the claims of police efficiency. Recent technological advances . . . have . . . made the process of obtaining a warrant itself more efficient." *Id*. (quotation marks and citation omitted).

Defendant contends that this testimony was inadmissible and highly prejudicial because it informed the jury that defendant had been incarcerated prior to the instant allegations, and argues that trial counsel rendered ineffective assistance by failing to object, or at the very least, to request a limiting instruction.

Under the objective reasonableness prong of the *Strickland* test, "[t]here is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015); see also *Strickland*, 466 US at 689; 104 S Ct 2052 ("[A] court must indulge in a strong presumption that counsel's conduct falls within the range of reasonable assistance."). This standard requires a reviewing court "to affirmatively entertain the range of possible 'reasons . . . counsel may have had for proceeding as they did.' " *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) quoting *Cullen v Pinholster*, 563 US 170, 196; 131 S Ct 1388; 179 L Ed 2d 557 (2011). In the instant case, the theory of defense was that defendant was insufficiently connected to 163 Seward Street to establish his constructive possession of the narcotics found there during the search. Scruggs's testimony that defendant's mail was addressed to him at the Oakland County Jail, rather than 163 Seward Street, arguably supported that theory. In addition, the defense stipulated that defendant had been convicted of a specified felony that rendered him ineligible to possess a firearm. Given the defense strategy of dissociating defendant from 163 Seward Street, and the likelihood that the jury would have inferred that defendant had previously been incarcerated based on defendant's stipulation, trial counsel's failure to object to Scruggs's testimony may reasonably have been a strategic choice to get on the record testimony suggesting that defendant did not reside at the Seward Street address. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Even if trial counsel did render deficient performance by failing to object, defendant has not shown prejudice in light of his stipulation that he previously had been convicted of a felony. Accordingly, this claim of ineffective assistance of counsel also fails.

## IV. HEARSAY

Defendant next contends that the trial court erred by excluding as inadmissible hearsay Janczarek's testimony regarding whether defendant's name was on the lease for 163 Seward Street. We find any error to have been harmless.

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Peope v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). A trial court abuses its discretion only when "that decision falls outside the range of principled outcomes." *Id*. at 251-252 (quotation marks and citation omitted). "Preserved nonconstitutional errors are subject to harmless error review under MCL 769.26[.]" *Id*. at 252. Under harmless error review, a defendant has the burden of establishing a miscarriage of justice under a more probable than not standard." *Id*. (quotation marks and citation omitted).

On the second day of trial, after establishing that investigators obtained a copy of the lease for 163 Seward Street, defense counsel asked Janczarek whether defendant's name was on the lease. When asked by the trial court if what was on the lease "was being offered to assert a matter for the truth," counsel agreed that she was offering the deputy's testimony for the truth of the

matter asserted regarding whether defendant's name was on the lease. The prosecution objected, arguing that the tenant-status of a given individual constitutes "specific content of the lease agreement" and is a matter asserted by the lease. The prosecution opined that counsel should have called the landlord as a witness and sought to admit the lease as a business record. The trial court sustained the prosecution's objection.

As an initial matter, we note that neither the prosecution's argument, the trial court's ruling, nor defendant's argument on appeal seem to align completely with defense counsel's argument in the trial court. At trial, counsel stated that she was not seeking to admit the lease into evidence. Rather, she was seeking testimony from Janczarek regarding his personal knowledge of the lease; specifically, did he, during the course of his investigation, see defendant's name on the lease. On appeal, defendant argues that the trial court erred by excluding the lease. To the extent the trial court deemed the lease inadmissible hearsay, defendant is correct. Contractual documents with legal effect independent of the truth of any statements contained in the documents are admissible. 31A CJS Evidence § 378; see also 2 McCormick, Evidence (6th ed), § 249, p. 133 ("When a suit is brought for breach of a written contract, no one would think to object that a writing offered as evidence of the contract is hearsay[.]").

Assuming for the sake of argument that the trial court's exclusion of Janczarek's testimony was error,[10] our review of the record convinces us that the error was harmless. The testimony defense counsel sought was minimally probative of whether defendant had an actual connection with the property and constructive possession of the drugs found in the kitchen. Janczarek had testified the previous day that defendant's registered address was in Detroit, not at the 163 Seward Street, and that it was common for people involved in the manufacture and sale of drugs to register at an address different from the one where the drug activity occurred. Further, as already recounted, there was ample testimony and evidence linking defendant to 163 Seward Street. In light of the deputy's testimony that defendant's registered address was in Detroit and the physical and testimonial evidence linking him to 163 Seward Street, defendant has failed to establish that omission of Janczarek's testimony regarding whether defendant's name was on the lease for 163 Seward Street more probably than not resulted in a miscarriage of justice. See *Thorpe*, 504 Mich at 252.[11]

## V. SENTENCING

Lastly, defendant argues that resentencing is required because the trial court unreasonably departed from the advisory guidelines minimum sentencing range. He contends that, because he

---

[10] It is not even clear that Janczarek could have answered the question put to him from personal knowledge. He testified that his partner was the one who obtained the lease, but said nothing about whether he actually saw it.

[11] Defendant argues in the alternative that trial counsel rendered constitutionally ineffective assistance by failing to lay the foundation for admission of the lease as a business record in accordance with MRE 803(6). Even if we assumed for the sake of argument that defense counsel rendered deficient performance, for the reasons explained above, defendant has not established that he was prejudiced thereby.

-14-

had never been sentenced to more than one year in jail, a sentence within the calculated minimum guidelines range of 19 to 76 months would have provided sufficient punishment and that his criminal record did not justify an upward departure of 32 months. We disagree.

We review a trial court's departure from the advisory sentencing guidelines for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). When reviewing a departure sentence for reasonableness, we examine whether the trial court adequately explained "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citation omitted). Factors to consider when determining "whether a departure sentence is more proportionate than a sentence within the guidelines range . . . include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. (citations omitted). A trial court abuses its discretion when it imposes a sentence that is not " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), abrogated on other grounds as recognized in *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017).

At the sentencing hearing, the trial court summarized the context for its sentencing decision as follows:

> I have reviewed the Presentence Investigative Report. I'm familiar with the facts and circumstances of the case where those surround the Defendant. Be advised the guideline range in this case is 19 to 76 months. He is 28 years of age. He was convicted at trial. He has seven prior felonies, 17 misdemeanors. It takes a lot of effort to get that many when you're only 28.
>
> The drugs in this case were valued at approximately 14 to $15,000. The firearm that was recovered had a round in the chamber. I do have the authority to sentence him consecutively for the major controlled substance offense one and three. I guess I could double and make consecutive. I don't intend to do that, but I do think that's important that I do have that discretion.

The court next provided an overview of defendant's substantial criminal history:

> His criminal history begins in 2008 with a minor . . . no valid operator's license, some disorderly conducts, things like that, and then a drug crime in 2012. Then it really escalates in 2011 for a controlled substance possession, cocaine, heroin, or another narcotic less than 25 grams, and controlled substance possession of marijuana and driver's license suspended. He received one year of [Holmes Youthful Trainee Act (HYTA)] probation, which is about as easy as you can get. Unfortunately, he violated that . . . and HYTA [probation] was revoked. Quickly thereafter, in 2012, another controlled substance possession case, another lenient sentence of probation and jail. He violated that, [and was] sentenced to 300 days in jail. Then in 2014, failure to stop at scene of personal injury accident and operating [with] a license suspended, revoked, denied, second offense, another one year in jail. Then in 2017, [he was] convicted of controlled substance,

-15-

delivery/manufacture less than 50 grams, habitual third; another controlled substance, delivery/manufacture less than 50 grams, habitual third; controlled substance possession of analogs, habitual third; controlled substance possession of analogs, another habitual third; and controlled substance second double penalty, habitual third, as well as driver's license suspended. He was given a very lenient [sentence] there, one year in the jail. With the Cognitive Behavior Program, he was released [November 13, 2017].

Lastly, the court explained why it thought an upward departure was reasonable:

> The Court finds that the mild upward deviation is reasonable and proportional in light of the following: His PRVs, as the People have noted, are off the charts. They were 110 with a maximum of 75. He has had similar crimes in the past that the Court has elaborated. He was released from Oakland County Jail approximately five months before for similar offenses, and here we are again.

Thus, the court concluded that an upward departure of 32 months was reasonable and proportional to the offense and the offender considering that the advisory sentencing guidelines did not adequately account for the extensiveness of defendant's criminal record, the frequency and rate of defendant's recidivism, and defendant's apparent resistance to rehabilitation. This Court has affirmed upward departure sentences where the minimum sentencing guidelines did not adequately account for a defendant's prolific criminal history, recidivism, and poor prospects for rehabilitation. See *People v Odom*, 327 Mich App 297, 315-316; 933 NW2d 719 (2019).

Defendant argues that even if the trial court explained its reasons for an upward departure, it did not justify the 32-month magnitude of the departure it imposed. This argument has some merit. The trial court did not expressly explain why a 32-month departure sentence was more fitting than a departure of some greater or lesser amount. However, the court found it important to note that it had discretion under MCL 333.7401(3) to impose a consecutive sentence for both of defendant's convictions under MCL 333.7401(2)(a). Had the court exercised its discretion and imposed consecutive sentences, defendant could have received consecutive within-guidelines minimum sentences of 76 months for possession with intent to deliver less than 50 grams of cocaine and possession with intent to deliver less than 50 grams of heroin, effectively resulting in a minimum term of 152 months' imprisonment, rather than the 108 months to which he was sentenced. In light of the trial court's decision not to exercise its authority to impose consecutive sentences, and considering the court's stated reasons for departing upward from the sentencing minimum guidelines range, we conclude that the court's imposition of a sentence less than midway between the maximum of the minimum guidelines range and what it could have imposed through consecutive sentencing was not unwarranted.

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher